IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| FRANK C. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV-07-388-S-BLW |
| | ) | |
| v. | ) | **INITIAL REVIEW ORDER** |
| | ) | |
| BEN YSURSA, SECRETARY OF STATE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court is the review of Plaintiff's Prisoner Civil Rights Complaint to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915 (e) and 1915 A. Plaintiff also filed a request for *in forma pauperis* filing status.

Having reviewed the record, the Court has determined that the Complaint fails to state cognizable claims. Therefore, the Plaintiff will not be allowed to proceed on his claim, and his request for *in forma pauperis* status is moot.

**INITIAL REVIEW ORDER 1**

## REVIEW OF COMPLAINT

Plaintiff is a prisoner at the South Idaho Correctional Institution (SICI). Plaintiff's status as a convicted felon who is currently incarcerated disqualifies him from voting in national, state or local elections. ID. CONST. Art.VI § 3, and I.C. § 18-310(1)[1]. The Idaho Code section under which the Plaintiff was sentenced allows for an alternative sentence of a fine without incarceration. I.C. § 37-2732(c)(1). Had the plaintiff's sentence been a fine with no incarceration, his right to vote would not have been denied. Because of the potential for an alternative sentence, Plaintiff alleges that Idaho's voting disqualification scheme is unequally applied as between persons convicted of the same crime who receive different sentences. The voting rights of those sentenced to incarceration, probation and parole are denied, while those sentenced to a fine and no incarceration suffer no such denial.

---

[1] Idaho Constitution Article VI § 3 states in relevant part:
> No person shall be permitted to vote . . . who has, at any place, been convicted of a felony, and who has not been restored to the rights of citizenship, or who, at the time of such election, is confined to prison on conviction of a criminal offense.

ID. CONST. Art. VI § 3

Idaho Code § 18-310(1) reads in relevant part:
> A sentence of custody to the Idaho State Board of Corrections suspends all the civil rights of the person so sentenced . . . and provided further that any such person may lawfully exercise all civil rights that are not political during any period of parole or probation.

I.C. § 18-310(1)

**INITIAL REVIEW ORDER 2**

## STANDARD OF LAW AND DISCUSSION

### Fourteenth Amendment Claims

### Equal Protection

All but two states (Maine and Vermont) disenfranchise felons in some manner for some length of time following conviction of certain felonies. The Supreme Court has held that disenfranchising a person convicted of a felony does not violate the Fourteenth Amendment. *Richardson v. Ramirez*, 418 U.S. 24 (1974). The Court considered § 2 of the amendment which states:

> Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the executive and judicial officers of a state, or the members of the legislature thereof, is denied to any of the male inhabitants of such state, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime*, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state.

U.S. CONST. amend. XIV, § 2 (emphasis added).

The Court observed that, while § 2 provided that disenfranchised state residents were not to be counted in determining the state's number of federal representatives, residents disenfranchised "for participation in rebellion, or other crime" were

**INITIAL REVIEW ORDER 3**

excluded from that calculation.  The Court found this to be an affirmative sanction of denying felons the right to vote stating that:

> [T]hose that framed and adopted the Fourteenth Amendment could not have intended to prohibit outright in § 1 of that Amendment that which was expressly exempted from the lesser sanction of reduced representation imposed by § 2 of the Amendment.

*Richardson*, 418 U.S. 24 at 43.

The Equal Protection Clause does prohibit a state from using a facially neutral law to intentionally discriminate on the basis of race. *Washington v. Davis*, 426 U.S. 229 (1976).  This includes a criminal disenfranchisement law enacted with the intent to deprive one racial group of its right to participate in the political process. *Hunter v. Underwood*, 471 U.S. 222, 233 (1985).  Plaintiff does not allege that he was discriminated against on the basis of his race.  Although Plaintiff alleges there has been an historical use of alternative sentences in conjunction with Idaho Constitution Article VI, § 3  as a method to deprive minority groups of the right to vote, he has offered no evidence that this has been the case since the subsequent amendments of Article VI to remove the

**INITIAL REVIEW ORDER 4**


discriminatory language previously contained in § 3[2]. Furthermore, Plaintiff does not allege that the history of Idaho's alternative sentence scheme or Idaho Constitution Article VI § 3 has worked to deprive him of his right to vote based on his race in the instant case.

The Plaintiff's primary argument seems to be that stripping one group of felons of the right to vote while not doing so to another group of felons when they have been convicted of the same crime somehow amounts to a violation of his constitutional right to equal protection of the laws. However, a state may disenfranchise all convicted felons or it can distinguish among them so long as the distinction is rationally related to a legitimate state interest. *Owens v. Barnes*, 711 F. 2d 25 at 27,28 (3rd Cir.) (1983). (A state may rationally decide that the loss of other basic liberties should also be accompanied by the loss of the right to participate in the democratic process).

### Privileges or Immunities

The privileges or immunities clause of the Fourteenth Amendment states in part, "No State shall make or enforce any law which shall abridge the privileges or

---

[2] Article VI, § 3 of the Idaho Constitution was amended in 1950 so that American Indians were no longer excluded from participation in the political process. The 1962 amendment removed the previous restrictions on the right to vote or hold office by Chinese or any person of Mongolian Decent. Following the 1982 amendment, the political process became open to citizens regardless of their religious beliefs.

**INITIAL REVIEW ORDER 5**

immunities of citizens of the United States." U.S. CONST. Amend. XIV. The only court to address whether or not the right to vote is a privilege or immunity of the citizens of the United States is the District Court of Arizona. *Coronado v. Napolitano*, Slip Copy WL 191987 (D.Ariz.) (2008). That court found that although there was no case law holding that the right to vote is a privilege or immunity, even if it were assumed to be, the result would be no different than it is under the equal protection analysis: The right of a felon to vote may be suspended without abridging any 'privilege' so long as the suspension is rationally related to a legitimate government interest. *Id.* (citing *Richardson*, 418 U.S. at 56).

### 2. Claims under 42 U.S.C. § 1973, Voting Rights Act of 1965

42 U.S.C. § 1973, also known as Section 2 of the Voting Rights Act of 1965 (VRA), prohibits states from denying or abridging the right of any citizen to vote on "account of race or color." 42 U.S.C. § 1973(a). A violation of subsection (a) is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in a State or political subdivision are not equally open to a class of citizens protected by subsection (a). 42 U.S.C. § 1973(b).

Both vote denial and vote dilution are included within the scope of the

**INITIAL REVIEW ORDER 6**

VRA. The VRA was amended in 1982, and a plaintiff no longer has to prove the defendant's discriminatory intent. *See Chisom v. Roemer*, 501 U.S. 380, 383-84 (1981). The Plaintiff can challenge voting qualifications under a "results" test, even if there is no proof that the law was passed with the intent to discriminate. *Id*.

Although other circuits have not held that the VRA applies to disenfranchised felons, the Ninth Circuit has been willing to apply the VRA where felon disenfranchisement has been challenged. *Farrakhan v. Washington*, 338 F.3d 1009 (9th Cir. 2003) *cert. denied,* 543 U.S. 984 (2004), *cf. Muntaquim v. Coombe*, 366 F.3d 102 (2nd Cir. 2004); *Hayden v. Pitaki*, 449 F. 3d 305 (2nd Cir. 2006); and *Johnson v. Florida* 405 F. 3d 1214 (11th Cir. 2005).[3]

---

[3] In *Muntaqim v. Coombe* the Second Circuit declined to extend the protection of the VRA to felons because in passing the VRA, Congress had not made clear any intent to alter the constitutional balance between the states and the federal government. *Muntaqim v. Coombe*, 366 F.3d 102 at 104. This case was later dismissed for lack of standing.

The Second Circuit again addressed this question in 2006. Once again that court held that the VRA does not encompass felon disenfranchisement. *Hayden v. Pataki*, 449 F.3d 305 at 310. In so holding, the court once again relied on the "clear statement" rule requiring Congress make their intention clear if they wish to alter the constitutional balance between states and the federal government through legislation such as the VRA. *Id.* at 323, (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).

In *Johnson v. Florida*, persons convicted of felonies who had completed all terms of their sentences challenged Florida's felon disenfranchisement law which required all felons to apply for clemency in order to have their voting rights restored. *Johnson v. Florida*, 405 F3d 1214 (2005) *cert. denied,* 546 U.S. 1015 (2005). The court read the plaintiff's interpretation of the VRA as creating a serious constitutional question because it would put the VRA at odds with § 2 of the Fourteenth Amendment. *Id* at 1230. The court also noted that the Ninth Circuit is alone in extending VRA to cover felon disenfranchisement. Id. at 1232, FN36.

**INITIAL REVIEW ORDER 7**

The court held that, "evidence of discrimination within the criminal justice system can be relevant to a § 2 analysis." *Farrakhan* at 338. The court stated that, "[a]lthough states may deprive felons of the right to vote without violating the Fourteenth Amendment," (*citing Richardson v. Ramirez*, 418 U.S. 24, 54-55) "when felon disenfranchisement results in denial of the right to vote or vote dilution on account of race or color, § 2 affords disenfranchised felons the means to seek redress." *Farrakhan*, 338 F. 3d 1009, 1016. Although the court found that a "bare statistical showing of disproportionate *impact* on a racial minority does not satisfy § 2 'results' inquiry," (quoting *Smith v. Salt River Project Agricultural Improvement and Power District* 109 F.3d 586 at 595 (9th Cir. 1997)(emphasis in original)),  the court stated that, "a causal connection may be shown where the discriminatory impact of a challenged voting practice is attributable to racial discrimination in the surrounding social and historical circumstances." *Farrakahn*, 338 F.3d at 1019. Relying on their holding in *Salt River*, the court stated that a "plaintiff may establish a § 2 violation by showing that, based on the totality of the circumstances, the challenged voting practice results in discrimination on account of race." 338 F.3d at 1015 (citing *Salt River*, 109 F.3d at 596 n.8) (applying the totality of the circumstances test to both vote dilution and vote denial claims).

**INITIAL REVIEW ORDER 8**

This case was remanded to the district court so that an evidentiary inquiry into the plaintiffs' evidence of racial bias in Washington's criminal justice system could take place, *Farrakhan*, 338 F.3d at 1020.  When the panel voted to deny a petition for a rehearing en banc, a vigorous dissent was written by Circuit Judge Kozinski,  joined by six other judges stating that:

> [t]his is a dark day for the Voting Rights Act.  In adopting a constitutionally questionable interpretation of the Act, the panel lays the groundwork for the dismantling of the most important piece of civil rights legislation since Reconstruction . . . all in an effort to give felons the right to vote.

359 F3d 1116 (Mem) at 1116-1117.

In the instant case, the plaintiff has not alleged that he is a member of a racial minority.  The Plaintiff has also failed to point to any specific evidence that would support his allegation that Idaho's alternative sentencing scheme works to deny the right to vote based on race.  It is clear that Article VI, § 3 of the Idaho Constitution has long since been amended to erase any trace of racial bias that it may have once contained.  The Plaintiff can point to no evidence to suggest that it is still used today to disenfranchise unpopular groups or that he is even a member of such a group.

## ORDER

NOW IT IS HEREBY ORDERED that Plaintiff's case is DISMISSED

**INITIAL REVIEW ORDER 9**

without prejudice.  The case having been dismissed, Plaintiff's Motion for *In forma pauperis* status is MOOT.



DATED:  **June 6, 2008**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**INITIAL REVIEW ORDER 10**